F I L E D
 Clerk
 District Court

AUG 09 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖÇKE, and SÜLEYMAN KÖŞ, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC, and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | Civil Case No. 1:20-cv-00031<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR RULE 23 CLASS ACTION CERTIFICATION** |

On November 20, 2020, Plaintiffs Özcan Genç, Hasan Göçke, and Süleyman Köş (collectively "Plaintiffs") filed the instant action against Defendants Imperial Pacific International (CNMI), LLC, Imperial Pacific International Holdings, Ltd. (collectively "IPI"), and IDS Development Management & Consultancy ("IDS").[1] Plaintiffs' Complaint asserted three causes of action: (1) Federal Labor Standards Act ("FLSA") minimum wage and overtime violations, (2) FLSA retaliation violations, and (3) a state-law breach of contract claim. (ECF No. 1.) Plaintiffs filed a Motion to Certify Class Under Federal Rule of Civil Procedure 23, seeking to certify a proposed class for their breach of contract

---

[1] At the initiation of this suit, Plaintiffs sought damages from a third Defendant: IDS Development Management & Consultancy. However, Plaintiffs have been unable to serve or reach IDS representatives and IDS has since been dismissed as a defendant. (Order Dismissing IDS, ECF No. 44.)

claim and defining the class as "all Turkish nationals with whom Defendants contracted to work in construction of the Imperial Palace Hotel in Saipan in 2020 under the H-2B temporary non-agricultural workers program." (Mot. to Certify Class 1, ECF No. 13.) On March 3, 2021, a hearing on the Rule 23 class action certification was held at which time the Court granted Plaintiffs' motion. (Min., ECF No. 30.) The Court now enters this Memorandum Decision providing its reasons for granting the motion.

I.   FACTUAL BACKGROUND

In 2019, a number of highly skilled and experienced Turkish electricians, carpenters, welders and plumbers were recruited in Turkey by Defendant IDS to build IPI's hotel-casino complex in Garapan, Saipan.[2] To entice the Turkish workers, IDS presented letters of commitment ("Taahhütname" in Turkish) naming IPI as the employer and laying out a number of attractive terms and conditions of employment in Saipan. (ECF Nos. 13-1 (Turkish), 13-2 (English).) These promises included a set period of employment, certain rates of compensation including overtime, a set number of regular and overtime hours, Turkish meals, life and workplace accident insurance, and other terms and conditions.

Attracted by the offer, Plaintiffs set out to begin processing the paperwork for their travels to and employment in Saipan. To do this, IDS required Plaintiffs to provide IPI a promissory note in 30,000 Turkish lira, approximately $4,000.00, and to find a guarantor. (Compl. 7.) Plaintiffs also

---

[2] IDS is a company registered in several countries including Turkey which recruits workers in Turkey and the Middle East for construction projects around the world. (Compl. 4, ECF No. 1.)

needed to travel from their various hometowns to Ankara, Turkey for interviews at the U.S. Embassy. This trip enabled Plaintiffs to acquire U.S. H-2B nonimmigrant visas, which allows employers to hire nonimmigrants to perform nonagricultural labor or services in the United States. (*Id*. at 5.) Plaintiffs successfully processed their paperwork and embarked on their journeys half-way around the world.

Plaintiffs allege that IPI breached the letters of commitment. In June 2020, payments to Plaintiffs began to dwindle precipitously. Plaintiffs' hours were cut: "All overtime was eliminated, leaving Plaintiffs with no more than 40 hours of regular wages earned per week." (*Id*. at 7.) Compensation frequently arrived late—sometimes a week, sometimes longer. "By early September, Plaintiffs had not been paid by IPI for more than a month." (*Id*. at 9.) IPI continued to pay Plaintiffs well past the biweekly deadlines, sometimes failing to provide payment altogether. And, for several of the Turkish workers, they were not paid the compensation rate agreed to.[3]

IPI also allegedly failed to fulfill their end of the bargain in other ways. IPI did not provide Turkish meals; rather, IPI prepared Chinese-tasting food which was, "for the Turkish workers, practically inedible." (*Id*. at 7.) Additionally, IDS's Pacific Projects Director and IPI company

---

[3] In a separate matter with IPI as named Defendants, the U.S. Secretary of the Department of Labor ("Secretary") moved for a finding of civil contempt against IPI entities for failure to remit payment to 136 workers under a 2019 Consent Judgment. *See* Order Appointing Receiver and Setting Terms of Receivership, *Acosta v. IPI et al*., 1:19-cv-00007 (D. N. Mar. I. Mar. 10, 2021), ECF No. 50. The Court found IPI in civil contempt and ordered IPI to immediately pay the back wages to the 136 workers who performed services in 2016 and 2017, and also required IPI to immediately pay $788,022.54 in 2020 and 2021 unpaid wages. Order Finding Civil Contempt and Imposing a Stop Work Order, *Acosta v. IPI et al*., 1:19-cv-00007 (D. N. Mar. I. Jan. 21, 2021), ECF No. 19. The Court takes judicial notice of these circumstances and that IPI has since made substantial payments to the more recent unpaid wages, including members of this FLSA collective action. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases"). IPI's payments have thus reduced the amount owed in total compensatory damages since the initiation of this lawsuit, and as reflected in Plaintiffs' Second Amended Statement of FLSA Damages (ECF No. 31).

representative Volkyan Koymen informed Plaintiffs that IPI would not honor their promise to compensate eligible Turkish workers for their return ticket to Turkey.[4] And, although healthcare insurance premiums were deducted from Plaintiffs' biweekly paychecks, they soon learned that their health insurance "had been suspended for nonpayment of premiums." (*Id*.)

Plaintiffs filed their Complaint in November 2020 and subsequently moved to certify the proposed class for their breach of contract claim under Federal Rule of Civil Procedure 23. Before filing their motion to certify class, Plaintiffs moved for entry of default against IPI as it did not plead or defend within the time permitted by the Federal Rules of Civil Procedure. The Clerk entered an amended entry of default against IPI in December 2020. Prior the hearing on the motion to certify class, the Court issued a Briefing Order directing IPI to respond to the motion and set the matter for a hearing. (Briefing Order, ECF No. 22.) Plaintiffs served a copy of the Briefing Order and the Notice of Hearing (ECF No. 23) to IPI. (Proof of Service, ECF No. 28.) IPI failed to file any response and failed to appear at the motion hearing. To date, IPI has not made an appearance in this action.

## II.     LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yakasaki*, 442 U.S. 682, 700-701 (1979)). To obtain certification, Plaintiffs bear

---

[4] Due in part to the expiration of their H-2B nonimmigrant status, and in part a response to the proceedings in the Secretary's case against IPI, many of the class members have been repatriatedFor the purposes of this Memorandum, the Court does not evaluate whether and which members have not been reimbursed for their repatriation to Turkey.

the burden of establishing the four class requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

In addition to satisfying the four requirements enumerated in Rule 23(a), the putative class must also satisfy at least one of the three requirements in Rule 23(b). Rule 23(b)(1)(B) merits certification if adjudications for individual class members "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(3) authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, and "[c]ertification is proper only if 'the trial court is satisfied, after a *rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Id*. at 350-51 (emphasis added). A "rigorous analysis" will often overlap with the merits of the plaintiffs claim. "That cannot be helped … Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters … is a familiar feature of litigation." *Id*. at 351. In fact, the merits "are often highly relevant when determining whether to certify a class," and district courts are to consider the merits "if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981. Moreover, the Court accepts all allegations in the complaint as true "so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609 (N.D. Cal. 2010).

### III. DISCUSSION

Plaintiffs argue that the four requirements of Rule 23(a) are fulfilled and they are able to meet the requirements of Rule23(b)(1)(B) and Rule 23(b)(3). The Court finds that each of the Rule 23(a) requirements are met and that Rule 23(b)(3) is satisfied. Despite Plaintiffs' arguments regarding Rule 23(b)(1)(B), the Court is not persuaded that the class may proceed on that basis. Nevertheless, finding that Rule 23(a) and Rule 23(b)(3) are met, the Court certifies the proposed class on those bases.

#### A. Rule 23(a)

Despite a smaller class size, Plaintiffs maintain that numerosity is met in large part due to the lack of financial resources and geographical dispersion of the class members: "Splintering this unified lawsuit in 29 separate actions would needlessly clutter the docket. . . . The only practical way for these 29 workers to go forward with their claims in a timely manner is by achieving the economies of scale available in a class action." (Mot. to Certify Class 3, ECF No. 13.) Plaintiffs' arguments regarding commonality and typicality are similar to one another. Factually, all members were hired by Defendants in Turkey, signed a letter of commitment detailing numerous terms and conditions, and transported to Saipan based on an H-2B nonimmigrant worker visa. Legally, all members are asserting a claim for breach of contract based on Defendants' failure to stick to their promises in the letters of commitment. And finally, Plaintiffs assert that there is adequate representation which is evidenced by their assent to be represented by the named Plaintiffs and counsel.

1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Class size is not a per se bar to class certification. And while there is no "'magic

number,'" classes of up to forty-five members have been found to be too small to merit certification; on the other hand, courts have "in appropriate circumstances" certified classes smaller than twenty-seven members. *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (citing cases). Where class size is not particularly large, courts consider various factors including "'(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members.'" *Id*. (citation omitted). The relevant question is whether joinder would be impracticable, not impossible. *Cervantez v. Celestica Corp*., 253 F.R.D. 562, 569 (C.D. Cal. 2008).

Although this proposed class leans on the smaller side, several factors weigh in favor of finding numerosity fulfilled. First, the instant action is significantly based on IPI' failure to provide adequate and timely compensation. Many members began their tenure in the CNMI as "destitute," and having to "borrow money from friends and relatives to cover travel expenses." (Compl. 7.) As a result, the members are unlikely to be able to afford bringing individual claims as costs would be prohibitive. The unwieldy cost is exacerbated by many of the members' dispersion "to the four corners of Turkey, halfway around the world from Saipan." (Mot. to Certify Class 3, ECF No. 13.) This not only increases the costs of litigation but also complicates the ability of members to file individual suits. Immigration, the global COVID-19 pandemic, and the general costs of litigation would not just make joinder impracticable, it would make it virtually impossible. Thus, the Court determines that judicial economy is best served by finding numerosity met.

7

2. Commonality and Typicality

Rule 23(a) also requires that "there are questions of law or fact common to the class," and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2), (3). The U.S. Supreme Court in *Dukes* described commonality and typicality as "tend[ing] to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." 564 U.S. at 349 n.5 (citation and internal quotation marks omitted).

Regarding commonality, the test is determining whether the "common contention" is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. It requires that Plaintiffs "have suffered the same injury," not that "they have all suffered a violation of the same provision of law." *Id*.

Typicality may be satisfied if representative claims are "reasonably coextensive with absent class members; they need not be substantially identical." *Santoro v. Aargon Agency, Inc.,* 252 F.R.D. 675, 681 (D. Nev. 2008) (citation and internal quotation marks omitted). The claim may "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and may be satisfied even if "there is a disparity in the damages claimed by representatives parties and other class members." *Id.* (internal quotation marks and citations omitted).

Both commonality and typicality are satisfied here. On commonality, the pertinent inquiry is

whether the veracity of the putative class' common legal contention would resolve each individual members' claim "in one stroke." *Dukes*, 564 U.S. at 350. Here, Plaintiffs not only argue from a common legal vantage point (namely, their breach of contract claim), they also argue from a common factual vantage point—they were all brought into the United States through the H-2B temporary non-agricultural worker program and all similarly underpaid, if at all. Thus, Plaintiffs assert the same injuries, not having been paid for instance, and the same violation of the law, breach of contract in addition to FLSA violations. Regarding typicality, the relevant question is whether the named Plaintiffs' claims and the members' claims are interrelated. Here, although the case may result in a difference of damages among the members, the damages all derive from the same event: IPI's breach of contract and consequent failure to compensate these Turkish workers. Thus, Plaintiffs succeed in meeting the commonality and typicality standard.

    3. <u>Adequacy</u>

Adequacy of representation requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "[A]dequacy turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named parties and their counsel will prosecute the action vigorously on behalf of the class." *Moralez v. Whole Foods Market, Inc.*, 897 F. Supp. 2d 987, 998-99 (N.D. Cal. 2012). Importantly, the class representative need not suffer the same type and degree of injury as every class member. *Id*. at 999. "Factual differences in the underlying claims of the class representative and class member will not preclude a finding of adequate representation if the class representative demonstrates an ability to vigorously pursue the claims of the class." *Id*.

Here, the named Plaintiffs and members were subject to the same legal violations based on the same factual circumstances. That is, they are all seeking compensation for IPI's breach of contract. Furthermore, no member has claimed any conflict of interest with the named Plaintiffs to date. The Court agrees with Plaintiffs' argument that the members' affirmative opt-in to the FLSA collective action evinces a unified set of members, satisfied with the named Plaintiffs' representation. And, while Plaintiffs' counsel once represented IPI in a prior matter, the Court agrees that "none of those matters w[ere] the same or substantially related to the Turkish workers' claims." (Mot. to Certify Class 5, ECF No. 13.) Thus, the Court finds that there is adequate representation and this final prerequisite is met.

**B. Rule 23(b)**

Plaintiffs argue that both Rule 23(b)(1)(B) and 23(b)(3) apply to this class.[5] As to Rule 23(b)(1)(B), Plaintiffs maintain the same arguments concerning commonality and typicality. That is, the Turkish H-2B workers "were all offered the same terms of employment in the Letter of Commitment, with the exception of a slightly higher pay scale for foremen," that there was a "guaranteed 'monthly fee' and a 'minimum of 45 hours,'" and that a return ticket to Turkey was promised. As previously stated, the Court finds that Plaintiffs' arguments satisfy Rule 23(b)(3), but it is not persuaded that Rule 23(b)(1)(B) is met.

1. Rule 23(b)(3)

Rule 23(b)(3) requires an analysis of predominance and superiority. A class action is

---

[5] At the March 3 hearing on this matter, Plaintiffs conceded to withdrawing their motion as to Rule23(b)(1)(A) but orally argued that Rule 23(b)(1)(B) now applies. (Min., ECF No. 30.)

maintainable if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

        *i.*       *Predominance*

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Individual questions are those where "'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or whether] the issue is susceptible to generalized, class-wide proof.'" *Id*. (citation omitted). Predominance asks whether "'the common, aggregation-enabling issues in this case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id*. (citation omitted). Common issues will not predominate if "a great deal of individualized proof would need to be introduced," or if "the resolution of an overarching common issue breaks down into an unmanageably variety of individual legal and factual issues." *Perez v. Leprino Foods Co.*, 2021 WL 53068, at *15 (E.D. Cal. Jan. 6, 2021) (citation and internal quotation marks omitted). Although the predominance inquiry shares features with the commonality-typicality test, the predominance standard is more demanding. *Amchem*, 521 U.S. at 623-24.

When one or more of the critical issues common to the case predominate, predominance may be satisfied "'even though other important matters will have to be tried separately, such as damages

or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted). Echoed by the Ninth Circuit in *Castillo v. Bank of America*, *NA*, 980 F.3d 723, 730 (9th Cir. 2020): "Individual differences in calculating the amount of damages will *not* defeat class certification where common issues otherwise predominate." (emphasis added). Judicial economy is a familiar theme in a Rule 23 class action evaluation, and where the "class members' individual recovery is relatively modest, the class members' interests generally favors certification." *Mejia v. Walgreen Co.*, 2020 WL 6887749, at *6 (E.D. Cal. Nov. 24, 2020).

The Court finds that individual questions predominate over common questions. Here, Plaintiffs state common questions of law and fact: (1) was there a contract between the Plaintiffs and the IPI; (2) did Plaintiffs perform the terms of the contract; (3) did IPI breach that contract; and (4) what are the resulting damages. They assert that all members traveled from Turkey with an H-2B nonimmigrant visa and were all offered the same terms and conditions of employment in the letters of commitment, "with the exception of a slightly higher pay scale for the foremen." (Mot. to Certify Class 7, ECF No. 13.) The individual questions relate to the exact amount promised, actually paid, and owed, i.e., total damages for each member. However, as the caselaw makes clear, individual damages do not automatically defeat issues that otherwise predominate. Thus, Plaintiffs have sufficiently established meeting prong one of the Rule 23(b)(3) evaluation.

   ii. *Superiority*

In addition to the predominance analysis, courts must evaluate the superiority of the class action mechanism. Rule 23(b)(3) lists four non-exhaustive factors courts consider when evaluating superiority:

    (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particularly forum; and
    (D) the likely difficulties in managing a class action.

A superiority analysis "tests whether 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Hawkins v. Kroger Co.*, 2020 WL 7421754, at *19 (S.D. Cal. Nov. 9, 2020) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)); *see Rodriguez v. QS Next Chapter LLC*, 2020 WL 6882844, at *5 (D. Ariz. Nov. 18, 2020) (determining that putative class' recoverable damages "are likely too small to justify individual litigation.").

At least regarding the factors enumerated, Plaintiffs have succeeded in meeting the standards. First, there is no evidence that the class members have any individual interests in controlling separate actions nor has there been any individual litigation that has already begun. Further, the alleged cause of action occurred in the CNMI and thus this is the only one forum for the matter to be heard. Finally, there does not appear to be any difficulties in managing this class action. The proposed class seems to be unified in their assertions and being a small class action, it is not anticipated that management would become unwieldy. The class action mechanism appears to be the most appropriate and superior mechanism to adjudicate this matter.

    2. <u>Rule 23 (b)(1)</u>

Rule 23(b)(1)(B) requires finding that mandating litigation by the individual members "would create a risk of adjudications with respect to individual class members that, as a practical matter, would

be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." "In essence, (b)(1)(A) and (b)(1)(B) of Rule 23 are opposite sides of the same coin—a coin which determines suitability for class action by reference to either the awkwardness, irrationality, or the probability of severe prejudice, of separate actions." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir. 1973). Subpart (A) "focuses on the rights of parties opposing the class" (usually defendants), while subpart (B) "focuses on the rights of unnamed class members." *McCluskey*, 268 F.R.D. at 677; *see Hurtado v. Rainbow Disposal Co., Inc.*, 2019 WL 1771797, at *10 (C.D. Cal. Apr. 22, 2019) (describing subpart (A) as considering "'possible prejudice to a defendant,'" whereas subpart (B) "'looks to prejudice to the putative class members.'" (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008)).

Nevertheless, the risk found in subpart (B) is not the possibility of "imposing incompatible standards of conduct on the defendant" as would be the case in subpart (A), but rather the risk of "an action on behalf of an individual on the interests of those who have rights similar to those of the individual bringing suit." *La Mar*, 489 F.2d at 466-67. Subpart (B) covers judgments in which an "individual action inescapably will alter the substance of the rights of others having similar claims." *Id.* at 467.

The Ninth Circuit has adopted "an extremely conservative view," only allowing for Rule 23(b)(1)(B) certification when "a ruling in the first of a series of separate actions will inescapably alter the substance of the rights of others having similar claims.'" *Mateo v. M/S KISO*, 805 F. Supp. 761, 772 (N.D. Cal. 1991) (citing *McDonnell Douglas Corp. v. U.S. Dist. Ct., Cent. Dist. of Cal.*, 523 F.2d

1083, 1086 (9th Cir. 1975)). In so adopting a conservative view, "the Ninth Circuit has expressly noted that where plaintiffs' claims are for damages, there is no possibility of judgments posing inconsistent standards." *Id*. "To 'inescapably bind' members of the putative class the ruling in the first suit must present the substantial possibility of exhausting the funds available to a defendant to pay later claims, or, actually bind absent members of the putative class through principles of res judicata." *Id*. at 773.

Here, Rule 23(b)(1)(B) is not met. Even if each individual member brought a separate breach of contract suit, a ruling for one member would not affect the ruling for the remaining members. As this is a claim for damages, the question is whether there is a "substantial possibility" that IPI's funds would be exhausted as to each individual member. While IPI's funds appear to be in a precarious position given the significant number of pending lawsuits in the current economic climate, Plaintiffs have not provided evidence that one member may exhaust IPI's funds to completion and at the detriment of the remaining members. Thus, the Court is not convinced that Rule 23(b)(1)(B) is a viable avenue for a Rule 23 class certification.

## IV.     CONCLUSION

For the foregoing reasons, the Court found that Plaintiffs have met their burden to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Numerosity, commonality, typicality, and adequacy have been met under Rule 23(a), and the predominance and superiority inquiries of Rule 23(b)(3) have been satisfied. The Court therefore GRANTS Plaintiffs' motion to certify the class under Rule 23 for their breach of contract claim and defines the class as "all Turkish nationals with whom Defendants contracted to work in construction of the Imperial Palace Hotel in Saipan in 2020 under the H-2B temporary non-agricultural workers program."

FURTHERMORE, the Court appointed Richard C. Miller of Banes, Horey, Berman and Miller, LLC to be class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 9th day of August, 2021.

/s/ *signature*

RAMONA V. MANGLONA
Chief Judge