F I L E D
 Clerk
 District Court
MAR 17 2025
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ÖZCAN GENÇ, HASAN GÖKÇE, and SÜLEYMAN KÖŞ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,<br><br>Defendants. | Case No. 1:20-cv-00031<br><br>DECISION AND ORDER GRANTING IN PART PLAINTIFFS' SECOND MOTION FOR ENTRY OF DEFAULT JUDGMENT |

Plaintiffs Özcan Genç, Hasan Gökçe, and Süleyman Köş, are the lead plaintiffs of the class of Turkish nationals with whom Defendants Imperial Pacific International (CNMI), LLC ("IPI") and Imperial Pacific International Holdings, Ltd. ("IPI Holdings") (collectively, "IPI") contracted to work in construction of the Imperial Palace Hotel in Saipan in 2020 under the H-2B temporary non-agricultural workers program. (Mem. Decision 15, ECF No. 45.) Before the Court is Plaintiffs' second motion for entry of default judgment on the sole remaining cause of action in this action, breach of contract, against IPI and IPI Holdings. ("Mot.," ECF No. 109). Plaintiffs' Motion is supported by F. Mert Öztuna's Declaration. (ECF No. 109-1.) Defendants filed their Opposition (ECF No. 111), with supporting exhibits (ECF No. 112-1–112-3), to which Plaintiffs replied (ECF No. 113). Prior to filing the instant Motion, Plaintiffs submitted an amended damages spreadsheet to reflect the inclusion of damages for some plaintiffs that recently opted into the class (ECF No. 101-1), supported by a declaration by Öztuna (ECF No. 101). At the hearing on the instant Motion, Plaintiffs further amended their spreadsheet of

damages orally and thereafter submitted the updated spreadsheet to show their claim for $1,148,893.51. (Pls' Ex. 18A, ECF No. 119.) Finally, Plaintiffs also rely on filings in support of their first motion for entry of default judgment on the breach of contract claim. (*See* ECF No. 77-1–77-2, 77-6–77-17.) For the following reasons, the Court GRANTS Plaintiffs' Motion for entry of default judgment but awards Plaintiffs damages in the lower amount of $833,750.23.

## I.    PROCEDURAL BACKGROUND

On December 30, 2020, the Clerk entered default against Defendants IPI and IPI Holdings. (ECF No. 10.) On the same day, the Court preliminarily certified the collective action and finalized the certification on February 8, 2021, under Rule 23 for their breach of contract claim. (Mins., ECF No. 11.) Plaintiffs now move the Court to enter default judgment for the breach of contract cause of action in their Complaint (ECF No. 1), based on the "Letter of Commitment" entered into between each of the workers and IPI. (Mot. 1.)

Plaintiffs filed their first motion for entry of default judgment for their breach of contract cause of action on the basis of both the Letter of Commitment and an IPI-IDS contract in which none of the Plaintiffs were named parties nor signatories (ECF No. 77-1). (ECF No. 77.) However, after the Court ordered supplemental briefing on the IPI-IDS contract, Plaintiffs withdrew their first motion for entry of default judgment on their breach of contract cause of action. (Mins., ECF No. 98.) Plaintiffs thereafter filed an amended damages spreadsheet with a declaration from Öztuna to indicate the updated damages claimed by the class to include the recently included opt-in plaintiffs. (ECF Nos. 98, 101, 101-1.) IPI filed an opposition to the amended spreadsheet. (ECF No. 103.)

Plaintiffs subsequently filed the Motion now before the Court, which was stayed pursuant to 11 U.S.C. § 362(a)(1) because of IPI's bankruptcy petition. On June 29, 2024, this Court's bankruptcy division granted relief from the stay to allow Plaintiffs to have their right to damages

determined in this proceeding. *In re Imperial Pacific International (CNMI) LLC*, Case No. 1:24-bk-00002, ECF No. 109 (June 10, 2024).

At the hearing on Plaintiffs' Motion, Plaintiffs orally amended their damages spreadsheet (Ex. 18A) and the Court admitted Plaintiffs' prior filings at ECF Nos. 77-1–77-2, 77-6–77-17 for consideration.

## II.      FACTUAL BACKGROUND

Plaintiffs are skilled and experienced Turkish electricians, carpenters, welders, and plumbers. (Compl. ¶ 23.) IDS recruited Plaintiffs to build IPI's hotel-casino complex in Garapan, Saipan. (*Id.*) IDS presented the Letter of Commitment (*Id.* ¶¶ 24–26, 29, 39–40, 91), which is attached to Plaintiffs' first motion for entry of partial default judgment (Letter of Commitment, ECF No. 77-2), naming IPI as the employer, and outlines terms of employment—including hourly and overtime wage rates for 270 hours of work per month. (Compl. ¶ 26.)

The Letter of Commitment provided that a Turkish cook would prepare meals. Specifically, the Complaint states "[t]he Letter of Commitment promised that the employer would provide three meals a day prepared by a Turkish cook." (*Id.* ¶ 29.) Plaintiffs arrived in Saipan in January 2020. (*Id.* ¶ 36.) Thereafter, "Defendants broke their promise in the Letter of Commitment to provide a Turkish cook. The meals that IPI offered were prepared to the state of Chinese workers and was, for the Turkish workers, practically inedible." (*Id.* ¶ 37.) The Letter of Commitment explicitly states: "The Employee's transportation, accommodation and *three meals a day shall be at the expense of the Employer*. *The meals shall be made by a Turkish Cook* and the nominated doctor shall check for the calories." (Letter of Commitment 1 (emphasis added).)

Plaintiffs state that the Letter of Commitment is a "valid and binding contract between Plaintiffs and Defendants." (Compl. ¶ 91.) They claim they satisfactorily performed their

employment duties and responsibilities but that "Defendants breached the contract by failing to provide all the work hours promised or the monthly wage promised, failing to provide a Turkish cook, failing to provide roundtrip airfare home to Turkey for workers owed leave after six months, failing to provide health insurance, and failing to provide paid sick leave." (*Id*. ¶¶ 92–93.) Thus, Plaintiffs seek "actual and consequential damages and prejudgment interest." (*Id*. ¶ 94.) Plaintiffs additionally pray for "[a]n order for a complete and accurate accounting of all the compensation to which Plaintiffs are entitled." (*Id*. at Prayer for Relief (C).)

Ultimately, as stated in their Motion and at the hearing, Plaintiffs request the following awards of damages:

1. Health insurance premiums: $18,987.83;
2. Turkish Food/meals: $869,120.00;
3. Airfare round-trip ticket: $129,000;
4. Home leave/paid leave/sick leave: $39,050.40;
5. Repatriation: $1,592.00 for Öztuna;

These five categories of damages, including the stipulated amounts submitted by the parties, comprise Plaintiffs' requested amount of $1,057,750.23. (Mins., ECF No. 123.)

At the default judgment hearing, Director of IPI Howyo Chi testified on behalf of IPI. Director Chi testified that the Turkish workers staying at the staff housing dorm requested that he look for a cook and Chi found them a Chinese cook to cook Chinese food for them. The Turkish worker who requested this on behalf of the workers was the project manager, Volkan Koymen. Chi testified Koymen hired the Chinese worker. Further, Chi testified that Koymen had Turkish construction workers working in the kitchen. Chi was unable to say exactly how long the Chinese chef cooked for the workers but testified that the chef cooked for at least three to six months.

Chi also testified that during the entire time he has been with IPI, no Turkish worker rejected the food or filed a food quality complaint. Chi stated that no Turkish worker demanded Hallal food. He further testified no Turkish worker was denied access to food. Chi stated the HR Counter was open during business hours, 8:00 a.m. to 6:00 p.m. and there was a drop box if someone wanted to leave an anonymous note. Chi further asserted about twenty people worked in HR during the relevant time when the Turkish workers were employed with IPI.

Öztuna testified on behalf of Plaintiffs. Öztuna is a civil engineer who had been a construction supervisor for IPI in 2020. (Tr. 61–62, ECF No. 124.) Öztuna testified that IPI never provided a Turkish cook to cook for the Plaintiffs. (*Id.* at 149.) He further testified that a meal on Saipan would cost about $16. (*Id.* at 117–18.) Öztuna also testified that "three week we can eat [sic] -- we ate in the kitchen perfectly without any issue," (*id.* at 109) and later Öztuna clarified that he ate for two months from IPI's kitchen (*id.* at 112).

### III.   LEGAL STANDARD

Parties must apply to the court for default judgment when the claim is not for a sum certain. Fed. R. Civ. P. 55(b)(2). Courts have discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In reviewing a claim for default judgment, all well-pleaded factual allegations in the complaint are taken as true. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). However, while detailed factual findings are not required by the moving party, legally insufficient claims or facts not within the pleadings are not established by default. *Trident Inv. Partners, Inc. v. Evans*, No. CV-20-01848-PHX-DWL, 2021 WL 75826, at *2 (D. Ariz. Jan. 8, 2021) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). The following factors, known as the *Eitel* factors, determine the propriety of default judgment: (1) possible prejudice to plaintiffs, (2) the merits of plaintiffs' substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the suit,

(5) possible disputes concerning material facts, (6) whether default is due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure in favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV. DISCUSSION

Plaintiffs argue that "[o]verall, the *Eitel* factors favor granting plaintiffs default judgment on their breach of contract claim." (Mot. 4.) IPI argues that the Court cannot grant default judgment for Plaintiffs' claim for Turkish meals as the claim has no contractual basis and was not pleaded in the Complaint. (Opp'n 3.) However, IPI does not contest Plaintiffs' request for six days of paid leave for qualified plaintiffs and health insurance premium deductions amounting to $18,726.20. (*Id.* at 4–5.) Although IPI in its Opposition did not contest the award of round trip airfare for qualified plaintiffs in the amount of $1,500 a person, at the hearing, IPI contended that there were no qualified Plaintiffs. IPI also contends that Plaintiffs are not entitled to repatriation airfare except for Öztuna. (*Id.* at 5–6.) At the hearing, Plaintiffs essentially conceded this last issue and withdrew their request for repatriation airfare except for Öztuna's. The Court analyzes the *Eitel* factors below and finds that the factors weigh in favor of granting Plaintiffs default judgment.

**A. First Factor: Prejudice to the Plaintiffs**

Plaintiffs argue that "[w]ithout judgment, there is little chance for Plaintiffs to ever collect from IPI for the money owed to them." (Mot. 4.) IPI does not contest that there would be prejudice to the Plaintiffs in either their Opposition (Opp'n 3–4) or at oral argument.

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered." *Wang v. Gold Mantis Const. Decoration (CNMI), LLC*, No. 1:18-cv-00030, 2021 WL 2065398, at *5 (D. N. Mar. I. May 24, 2021) (citing *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014)). District courts in the Ninth Circuit typically find

prejudice exists if default judgment provides the only recourse for recovery and the parties' attempts to recover via judicial proceeding would otherwise be futile because the defendant has not appeared in the action. *See, e.g., Aspen Am. Ins. Co. v. Morrow*, 643 F. Supp. 3d 941, 948–49 (D. Alaska 2022). In *Nolan v. Calello*, No. 2:21-cv-00981-AB-RAO, 2021 WL 4621945, at *3 (C.D. Cal. July 8, 2021), the court found prejudice where the defendants had not filed answers nor moved to set aside the clerk's entry of default. Similarly, here, IPI has neither filed an answer nor moved to set aside the Clerk's entry of default. Therefore, although IPI has now appeared in this matter, Plaintiffs will have no recourse if default judgment is not entered and therefore this factor weighs in favor of entry of default judgment.

### B. Second and Third Factors: Merits of the Claim and Sufficiency of the Complaint

IPI alleges that there is no contractual basis for Turkish meals and that Plaintiffs did not plead it in their Complaint. (Opp'n 3-4.) At the hearing, IPI further contends they were not given adequate notice because the Letter of Commitment was not included as an attachment to the Complaint. IPI also argues that it did not sign the Letter of Commitment, and therefore, there is no binding contract to establish liability, but even assuming that the Letter of Commitment is a binding contract, IPI argues that the Complaint did not specify all the contractual obligations, and the Letter of Commitment only applies after October 1, 2020. Plaintiffs argued the October 1, 2020, date is a typo as the workers were brought to Saipan prior to that date, and in any event, the proceeding is currently at the damages, not at the liability stage.

As an initial matter and as addressed at the hearing, "[c]ertain written instruments attached to pleadings may be considered part of the pleadings." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)). Moreover, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

(citations omitted). Plaintiffs' Complaint extensively references the Letter of Commitment as the contract at issue in this case between IPI and Plaintiffs. (*See* Compl. ¶¶ 24–26, 29–32, 37.) Further, the Letter of Commitment forms the basis of Plaintiffs' breach of contract claim identified in their Complaint. (*Id.* ¶¶ 90-94.) For these reasons, the Court found that IPI was given adequate notice through the Complaint regarding the Letter of Commitment and IPI's breaches of the contract even though the Letter of Commitment was not attached to the Complaint.

Turning to the *Eitel* factors, "[t]he second and third *Eitel* factors involving the merits of Plaintiffs' claims and the sufficiency of the complaint 'require that plaintiff[s'] allegations state a claim on which [they] may recover.'" *Wang*, 2021 WL 2065398, at *5 (quoting *Discovery Commc'n Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001)).

Plaintiffs request that the Court enter default judgment for their breach of contract claim. A claim for breach of contract in the Commonwealth of the Northern Mariana Islands ("CNMI") requires demonstrating: "(1) the existence of a valid contract; (2) the breach of an obligation imposed under the contract; and (3) damage to the plaintiff resulting from the breach." *Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 19-cv-00016, 2020 WL 1942454, at *5 (D. N. Mar. I. Apr. 23, 2020). Importantly, all well-pleaded factual allegations in the complaint are taken as true. *DIRECTV, Inc.*, 503 F.3d at 854.

Here, the Complaint sufficiently alleges there was a valid contract between Plaintiffs and IPI to include the Letter of Commitment that stated there would be three meals a day prepared by a Turkish cook. First, the Complaint alleges all the Plaintiffs were employees of IPI admitted to the United States under the H-2B temporary non-agricultural worker program. (Compl. ¶ 3.) Second, the Letter of Commitment indicates the employers are IPI and IDS. (Letter of Commitment 4.) The Letter's general conditions include a requirement that the employment

contract to be executed between the employer and employee cover the rights in the Letter of Commitment. (*Id.* at 1.) Finally, "[t]he Letter of Commitment promised that the employer *would provide three meals* a day prepared by a Turkish cook." (Compl. ¶¶ 24, 29 (emphasis added).) In particular, "[t]he meals shall be made by a Turkish Cook and the nominated doctor shall check for the calories. Meat and chicken shall be supplied in accordance with the highest American Standards while halal slaughter is not possible." (Letter of Commitment 1.) IPI did not provide Turkish meals or a Turkish cook. (Compl. ¶ 37.) Therefore, the Complaint sufficiently alleges IPI breached an obligation of the contract. As a result of IPI's breach, "[t]he meals that IPI offered were prepared to the taste of Chinese workers and was, for the Turkish workers, practically inedible." (*Id.*) Through testimony of Director Chi, IPI admitted that instead of hiring a Turkish cook to prepare the Turkish workers their meals, they hired a Chinese cook that cooked Chinese food.

Additionally, the Complaint identifies that the Letter of Commitment promised three days of paid sick leave every six months; if the employee extended his contract for a second six months, he would be entitled to six days of paid leave and an airline ticket home or the cash value of such ticket. (*Id.* ¶¶ 31–32.) IPI breached the contract by failing to provide these stated promises. (*Id.* ¶ 93.) Therefore, because the Court must accept well-pleaded factual allegations in the Complaint as true, the Court finds that IPI breached its contract with Plaintiffs and these factors weigh in favor of entering default judgment.

### C. Fourth Factor: Sum of Money at Stake

IPI does not directly argue that this factor weighs against the Court's entry of default judgment. Instead, with respect to Turkish meals specifically, IPI argues that "Defendants . . . out of respecting the applicable rules of default, [are prepared] to offer compensation to the

Plaintiffs equivalent to the market value of the services by a Turkish cook, at the prevailing wage in Saipan during the relevant period," which is less than Plaintiffs' requested amount. (Opp'n 4.)

"This factor balances 'the amount of money at stake in relation to the seriousness of Defendant's conduct." *Gray v. Imperial Pac. Int'l (CNMI), LLC*, Case Nos. 1:19-cv-00008, 1:19-cv-00020, 2023 WL 3714156, at *10 (D. N. Mar. I. May 30, 2023) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Id.* (quoting *Vogel*, 992 F. Supp. 2d at 1012). "In determining whether the amount at stake is reasonable, courts consider a plaintiff's declarations, calculations, and other documentation of damages." *Id.* (quoting *Fudy Printing Co., Ltd. v. Aliphcom, Inc.*, 2019 WL 2180221, at *4-5 (N.D. Cal. Mar. 7, 2019)).

The sum of money at stake is reasonable given Plaintiffs' calculated damages spreadsheet and Öztuna's testimony as to each meal's cost. Plaintiffs seek a total of $1,057,750.23 for health insurance premiums, three Turkish meals a day, airfare, paid leave, and repatriation of Öztuna.

Courts have identified costs that vary greatly for meals. *See Lozano v. Davis*, Civ. Act. No. H-16-2507, 2018 U.S. Dist. LEXIS 241615, at *12 (S.D. Tex. Mar. 29, 2018) (costing $17.97 to $29.31 per day according to Defendants); *Bilal v. Lehman*, Case No. C04-2507-JLR-JPD, 2006 U.S. Dist. LEXIS 93152, at *32 (W.D. Wash. Oct. 2, 2006) (estimating per day costs of halal diet at $6.91 according to Defendants); *Aiello v. West*, 207 F. Supp. 3d 886, 893 (W.D. Wis. 2016) ("[D]efendants point out that as of November 2015, one halal meal cost $1.06, one Ramadan meal cost $1.13, one Kosher for Passover meal cost $4.13; one plant-based meal cost $0.88 and one general meal cost $0.92."). Given the increasing cost of food and the CNMI's

remote location with limited resources, $40/day for three meals is reasonable. (*See* Öztuna Decl. 2.)[1]

### D. Fifth Factor: Possibility of a Dispute Concerning Material Facts

As the Clerk has already entered default, the Court accepts all well-pleaded facts, except those pertaining to damages, as true. *See Televideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The Court recognizes there is a possibility of dispute concerning material facts because it appears IPI is defending itself in the damages proceedings by asserting it could not be held liable for any breach of the Letter of Commitment because the effective date of the Letter of Commitment is October 1, 2020. IPI relies on the apparent typographical error and therefore its contention is not plausible and fails because it is undisputed that the skilled Turkish workers were recruited and enticed to accept the offer of employment from their home country and had to travel half-way around the world to perform their work services starting in January, 2020, which occurred prior to the October 1, 2020 date indicated as when the worker declared to have "made an application" to be employed. (Letter of Commitment 1.) Furthermore, the English version of the Letter of Commitment has the date "01.10.2019" indicated at page 2, which is the same date used throughout in the Turkish version of the Letter of Commitment. The date October 1, 2020, is likely an erroneous translation of the "01.10.2019" date, which more likely was for an October 1, 2019, or January 10, 2019, date. Given the certification of submission of "documents necessary for the procedures for work permit, visa, transportation and procedures to be followed at the Turkish Employment Agency in order to work at the relevant position," (*id.* at 2) the October 1, 2020, date at page 1 is clearly erroneous. Based on these facts, this factor weighs in favor of granting default judgment.

---

[1] Additionally, IPI did not offer any testimony or evidence that this amount per day was unreasonable.

### E. Sixth Factor: Possibility of Excusable Neglect

There is no possibility of excusable neglect, nor does IPI contend excusable neglect. "The determination of what conduct constitutes 'excusable neglect' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt. v. Am. Bankers Ins. Co. of Fl.*, 653 F.3d 1108, 1111 (9th Cir. 2011). "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). In this case, Plaintiffs served IPI with the Complaint and Summons and therefore, this factor weighs in favor of the Court entering default judgment. (*See* ECF No. 2.)

### F. Seventh Factor: Strong Policy Favoring Decisions on the Merits

As a last factor, "[c]ases should be decided upon their merits whenever possible." *Eitel*, 782 F.2d at 1472. This factor usually weighs in the defendant's favor, as it does here.

### G. Weight of All *Eitel* Factors

*Eitel* factors one through six weigh in Plaintiffs' favor; entry of default judgment is appropriate because all factors but one—the strong policy factor—weigh in favor of the Court entering default judgment.

### V.    DAMAGES

With liability established, the Court now turns to the issue of calculating damages. Plaintiffs request actual and consequential damages and prejudgment interest. (Compl. ¶ 94.) IPI has stipulated to the following damages: health insurance premium deductions for $18,987.83, paid leave for $24,220.80, and a final plane ticket for Öztuna for $1,592. This totals $44,800.63 in stipulated damages. This leaves Plaintiffs' contested requests for $869,120.00 for Turkish meals, $129,000 for round trip tickets for eighty-six persons, and an additional $14,829.60 to the

stipulated amount for paid leave. In total, including the stipulated amounts, Plaintiffs request $1,057,750.23.

### A. Available Damages for Breach of Contract

The CNMI Supreme Court has upheld the award of consequential damages for a breach of contract. *See Tano Grp., Inc. v. Dep't of Pub. Works*, 2009 MP 18 ¶ 68. In doing so, the CNMI Supreme Court relied on Restatement (Second) of Contracts: Unforeseeability and Related Limitations on Damages § 351:

> (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
>
> (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>
> (a) In the ordinary course of events, or
>
> (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

*Id.* ¶ 31 (quoting Restatement (Second) of Contracts § 351 (1981)). "Comment b of Restatement § 351 points out that to the extent the loss occurs outside of the ordinary course of events, recovery is inappropriate unless it was foreseen by the party because of special circumstances that the party knew of at the time they entered into the contract." *Id.* In summary, the law attempts to ensure the injured party the benefit of his bargain, but the amount must be foreseeable, measurable with a reasonable degree of certainty, and adequately proven. *Id.*

### B. Turkish Meals

The majority of IPI's arguments against awarding damages to Plaintiffs for their failure to provide Turkish meals goes to liability, which have been addressed by the Court in its decision to enter default judgment. However, IPI does argue that Plaintiffs had an obligation to mitigate the damages and failed to do so. (Tr. at 43.) As an initial matter, although the CNMI Supreme

Court has recognized mitigation as an affirmative defense to breach of contract, the entry of default precludes IPI from asserting any affirmative defense on default judgment. *See id.* ¶ 49; *see, e.g., Rubicon Glob. Ventures v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 658–59 (9th Cir. 2015).

Turning to the evidence provided by the parties, Öztuna testified that IPI never provided a Turkish cook to cook for the Plaintiffs. (Tr. 149.) This was not contested by IPI's witness, Director Chi. Öztuna testified that when IPI could not provide Turkish food, Plaintiffs would buy fast food and sometimes cook. Öztuna further testified that a meal would cost about $16. (*Id.* at 117–18.) Öztuna's testimony regarding how much a meal would cost was not contested by IPI's witness or any other evidence by IPI. Öztuna also testified that "three week[s] we c[ould] eat -- we ate in the kitchen perfectly without any issue," (*id.* at 109) and later Öztuna clarified that he ate for two months from IPI's kitchen (*id.* at 112). Of note, IPI does not indicate any Plaintiffs identified in Plaintiff's Exhibit 18A that were not entitled to the meals per day. Rather, IPI generally argues, through the testimony of Director Chi that Plaintiffs did not file any complaints about the food and that their issue with the food dealt primarily with taste.

Given Öztuna's uncontested testimony regarding how much meals cost and Plaintiffs' accounting at exhibit 18A, and the cost of food on Saipan, the Court finds that $40 per day for meals per Plaintiff is foreseeable, measured with a reasonable degree of certainty, and adequately proven. However, given Öztuna's testimony that Plaintiffs ate at IPI's kitchen for two months, each Plaintiffs' accounting for meals per day is reduced by $40 a day for eight weeks. Therefore, Plaintiffs are awarded a total of $645,120 for Turkish meals.

### B. Round Trip Tickets

Plaintiffs request round trip tickets for eighty-six Plaintiffs at $1,500 for a total of $129,000. (Tr. 56.) IPI argues that it needs the identity of the eighty-six Plaintiffs to determine

whether they are qualified. (*Id.* at 34.) After Plaintiffs identified the individuals in Exhibit 18A, IPI did not identify any individual Plaintiffs that are not qualified. Rather, IPI argues that no Plaintiff is entitled to the round-trip ticket because of the date on the Letter of Commitment. IPI's argument concerns liability and not damages. As liability has already been established, the Court turns to whether $1,500 for a round-trip plane ticket is foreseeable, measurable with a reasonable degree of certainty, and adequately proven.

Plaintiffs' Complaint asserts that if an employee extended his contract for a second six months of employment, he would be entitled to an airline ticket home or the cash value of a ticket. (Compl. ¶ 32.) Plaintiffs' Exhibit 18A outlines the number of pay periods worked by each Plaintiff and the round-trip ticket is only indicated for Plaintiffs who attest they worked for a second six months of employment. The lengths of Plaintiffs' employment outlined in Exhibit 18A are not contested by IPI. As such, the Court finds that the eighty-six Plaintiffs identified in Exhibit 18A are entitled to round trip airfare in the amount of $1,500 each. Therefore, the Court awards a total of $129,000 for round trip tickets for eighty-six Plaintiffs.

### C. Paid Leave

Again, IPI argues that Plaintiffs are not entitled to paid leave because of the date on the Letter of Commitment. However, IPI stipulates to the amount of $24,220.80. Again, IPI's argument concerns liability and not damages. As liability has already been established, the Court turns to whether the amount for six day's paid leave is foreseeable, measurable with a reasonable degree of certainty, and adequately proven.

Öztuna testified that the six day's paid leave amounts as to each Plaintiff, was determined by a laborer's per day rate and whether a person was qualified given the requirement of a person working for thirteen pay periods. IPI offered no testimony or evidence that any Plaintiffs' per day rate was inaccurate. Nor did IPI indicate any Plaintiffs that are not qualified based on the

amount of pay periods they worked. As such and based on Öztuna's testimony and Plaintiffs' account at Exhibit 18A, the Court finds that Plaintiffs' request of $39,050.40 was foreseeable, measured with a reasonable degree of certainty, and adequately proven. Plaintiffs are awarded their full requested amount for paid leave.

VI.    **CONCLUSION**

The Court finds that the *Eitel* factors support the Court entering default judgment, and further finds damages appropriate in the total amount of $833,750.23 based on the following amounts:

1. Turkish Meals: $645,120.00
2. Health Insurance Premiums: $18,987.83
3. Round Trip Tickets: $129,000.00
4. Six Day's Paid Leave: $39,050.40
5. Final Ticket for Öztuna: $1,592.00

Judgment in favor of Plaintiffs for said total amount shall enter plus prejudgment interest and post-judgment interest at the prevailing federal rate of when judgment is entered.

IT IS SO ORDERED this 17th day of March 2025.

RAMONA V. MANGLONA
Chief Judge